UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | DOCKET NO. 3:15CR158-MOC |
| v. | **BILL OF INFORMATION** |
| | Violations: |
| | 18 U.S.C. § 1349 |
| KRISTINE LOUISE JOHNSON | 18 U.S.C. § 1343 |

THE UNITED STATES ATTORNEY CHARGES:

At the specified times and at all relevant times:

### Introductory Allegations

1.  From in or about April 2014 through in or about February 2015, defendant KRISTINE LOUISE JOHNSON ("JOHNSON") and others unnamed in this Bill of Information, and known and unknown to the United States Attorney, ran a $6.8 million "Ponzi" scheme through a sham internet company called "The Achieve Community" (TAC). JOHNSON and another person known to the United States Attorney lured investment victims by falsely claiming that they would receive a bogus 700% return on investment when, in truth and fact, TAC operated as a fraudulent Ponzi scheme whereby JOHNSON used monies from later victim-investors to pay fraudulent returns to earlier victim-investors and to personally enrich herself. As a result of the scheme and artifice to defraud, over 10,000 victims worldwide, including those in the Charlotte, North Carolina area, sustained losses totaling millions of dollars.

### Relevant Entities and Individuals

2.  Company #1 was a Delaware corporation founded, owned and operated by JOHNSON and uncharged co-conspirator #1 (hereinafter CC#1) in or about March 2014.

3.  CC #1, a resident of Wyandotte, Michigan, co-owned Company #1 and served as President of the corporation through which he and JOHNSON co-owned and operated TAC.

4.  During the relevant time period, JOHNSON, a resident of Aurora, Colorado served as Chief Financial Officer (CFO) and managed day to day operations of TAC, including managing company bank accounts and producing marketing materials.

## Scheme and Artifice to Defraud

5. From in or about January 2014 through in or about February 2015, JOHNSON, CC #1 and others engaged in a scheme and artifice to defraud victims of over $4.7 million ($6.8 million minus principal investments paid back to investors to keep the scheme going) by making a series of false and fraudulent representations, omissions of material facts and deceptive half-truths. Such misrepresentations generally and at various times included:

   a. JOHNSON falsely told potential participants that TAC was not a "Pyramid Scheme." In truth and in fact, TAC operated solely as a pyramid scheme by which initial investors were paid with later investors' money;

   b. JOHNSON falsely told potential investors that the "more products purchased, the more people move through the matrix and get paid." In truth and in fact, there were no products; early victim-investors were paid returns with money contributed by later victim-investors in Ponzi-like fashion, regardless of the purchase of any products;

   c. The co-conspirators falsely promoted TAC as a "lifetime income plan" with "limitless" returns when, in reality, the Ponzi scheme could only operate with ever increasing infusions of new victim-investor cash;

   d. The co-conspirators falsely represented that TAC was able to sustain and continue making payouts through the use of what they called a "Triple Algorithm" and a "3D Matrix," which were so complex that they could not be explained in writing. In reality, no such algorithm or matrix existed and the only revenue for the scheme came from victim-investors;

   e. The co-conspirators claimed that they were participants in the scheme in the same fashion as all other participants in the scheme, when in truth and in fact, JOHNSON misappropriated over $200,000 for her own personal use; and

   f. The co-conspirators made false oral representations and transmitted bogus descriptions of the business model to payment processors in which they fraudulently described the scheme.

6. In order to sustain the scheme, the co-conspirators encouraged investors to "re-purchase" positions in the matrix, thereby reducing the amount of money needed to pay out to early investors and enabling the co-conspirators to prolong the scheme.

7. As the scheme grew in size and scope, JOHNSON concealed the true nature of the scheme from financial entities, regulators, and others through multiple misrepresentations. For example:

   a. When the co-conspirators became concerned that the use of the term "investment" would draw scrutiny from regulators, they instructed victim-investors that "We ARE NOT an INVESTMENT program, please don't use that term when you speak or post about our re-purchase strategy"; and

b. When their initial payment processor concluded that TAC was operating a Ponzi scheme, the payment processor terminated TAC as a client, advising TAC that they were terminated for "compliance issues" with their contract. Subsequently, the co-conspirators falsely told victim-investors that the payment processor had terminated TAC as a client because the payment processor was unable to handle the large amount of money that TAC paid to victim-investors.

8. Ultimately, the scheme began to crumble and payment processors stopped processing Ponzi payments to victim-investors. By the dissolution of the scheme in February 2015, the co-conspirators owed victim-investors at least $51 million in purported investment returns, yet JOHNSON, CC#1 and TAC had only approximately $2.6 million, or approximately 4% of such total liability available.

9. During this same time period, JOHNSON diverted at least $200,000 in victim investor fund to her personal enrichment.

## COUNT ONE
### (Wire Fraud Conspiracy)

10. The United States Attorney realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 9 of the Bill of Information, and further alleges that:

11. From in or about January 2014 through in or about February 2015, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendant,

**KRISTINE LOUISE JOHNSON**

did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree with others known and unknown to the United States Attorney to commit certain offenses against the United States, namely:

a. wire fraud, that is, having devised a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of attempting to execute, and executing such scheme and artifice, did knowingly, and unlawfully transmit and cause to be transmitted by means of a wire communication in interstate commerce, the following signs, signals, and sounds, to wit, wire transfers of funds, email and "Skype" communications to both victims and co-conspirators, and video and written blogs posted on the internet, in violation of 18 U.S.C. Section 1343.

All in violation of Title 18 U.S.C. Section 1349.

## NOTICE OF FORFEITURE

12. Notice is hereby given of the provisions of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by § 981(a)(1)(C). The following property is subject to forfeiture in accordance with section 982 and/or section 2461(c):

    a. all property which is proceeds of the violations alleged in this bill of information; and

    b. in the event that any property described in (a) cannot be located or recovered or has been substantially diminished in value or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant, to the extent of the value of the property described (a).

13. The following property is subject to forfeiture on one or more of the grounds stated above: a money judgment for all currency and monetary instruments constituting or derived from proceeds traceable to the scheme alleged in this bill of information, including but not limited to the sum of approximately $2.6 million in proceeds.

JILL WESTMORELAND ROSE
ACTING UNITED STATES ATTORNEY

*/s/ Corey F. Ellis*
_____
COREY FRAZIER ELLIS
ASSISTANT UNITED STATES ATTORNEY